**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LAUREN SUAREZ and PEDRO MELO,

                    Plaintiffs,

    -against-

CARTER MURRAY, CARMEN MURRAY, and
FCB WORLDWIDE, INC.,

                Defendants.

Case No. 7:20-cv-03514-JCM

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT FCB WORLDWIDE, INC.'S MOTION TO DISMISS**
_____

YANKWITT LLP
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.:  (914) 686-1500
Fax:  (914) 801-5930
*Counsel for Defendant FCB Worldwide, Inc.*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

I.    The Murrays Hire Plaintiffs to Work As Live-In Caretakers ............................................ 2

II.   After the Murrays Counterclaim, Plaintiffs Name FCB as a Defendant ............................ 3

III.  The Court Grants Leave for Defendants to Move to Strike and to Dismiss ......................... 6

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ....................................................................................................................... 7

I.    Counts 1 Through 6 Should Be Dismissed Because Plaintiffs Were Not FCB
Employees .................................................................................................................... 7

     A.   The Second Circuit Applies the Economic Reality Test to Determine Whether an
Entity is an Employer Under the FLSA and the NYLL ............................................. 7

     B.   Plaintiffs' Conclusory Allegations Fail to Satisfy a Single Carter Factor ................. 8

        1.   Plaintiffs Do Not Allege FCB Had the Power to Hire or Fire Them .................... 8

        2.   Plaintiffs Do Not Allege FCB Supervised or Controlled Their Work Schedules
or Conditions of Employment ................................................................................ 9

        3.   Plaintiffs Do Not Allege FCB Determined Their Rate and Method of
Payments.................................................................................................................10

        4.   Plaintiffs Do Not Allege FCB Maintained Their Employment Records .............. 10

II.   Count 8 Should Be Dismissed Because FCB Was Not Unjustly Enriched ......................... 11

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 6, 7

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................... 6, 7

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,*
  373 F.3d 296 (2d Cir. 2004) .............................................................................. 11

*Bytemark, Inc. v. Xerox Corp.,*
  342 F. Supp. 3d 496 (S.D.N.Y. 2018) ............................................................... 11

*Carter v. Dutchess Cmty. Coll.,*
  735 F.2d 8 (2d Cir. 1984) .................................................................................... 7

*Feibleman v. Trustees of Columbia Univ. in City of New York,*
  2020 WL 3871075 (S.D.N.Y. July 9, 2020) ...................................................... 12

*Herman v. RSR Sec. Servs. Ltd.,*
  172 F.3d 132 (2d Cir. 1999) ................................................................................ 7

*Huer Huang v. Shanghai City Corp.,*
  2020 WL 2319166 (S.D.N.Y. May 11, 2020) ..................................................... 8

*Jianjun Chen v. 2425 Broadway Chao Rest., LLC,*
  2019 WL 1244291 (S.D.N.Y. Mar. 18, 2019) ..................................................... 7

*Mangiafico v. Blumenthal,*
  471 F.3d 391 (2d Cir. 2006) ................................................................................ 5

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,*
  418 F.3d 168 (2d Cir. 2005) .............................................................................. 12

*Solis v. ZEP LLC,*
  2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020) ..................................................... 8

*Yongfu Yang v. An Ju Home, Inc.,*
  2020 WL 3510683 (S.D.N.Y. June 29, 2020) ................................................. 8, 10

**Statutes**

29 U.S.C. § 203(d) ................................................................................................................. 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 1

Defendant FCB Worldwide, Inc. ("FCB"), respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint (the "SAC") (Dkt. No. 39) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs Lauren Suarez and Pedro Melo were hired to work as live-in caretakers at a home (the "Property") owned by Defendants Carter and Carmen Murray (together "the Murrays"). Without permission and without regard for the safety of the Murrays or their children, Plaintiffs harbored a dangerous, unlicensed pit bull on the Property. After Plaintiffs were found out, they resigned and brought wage and hour claims against the Murrays. In response to the Complaint, the Murrays asserted well-pled and meritorious counterclaims. Then, in a tactic designed solely for harassment, Plaintiffs filed a meritless First Amended Complaint ("FAC") and then filed the equally meritless SAC.[1]

Among other improprieties, the SAC asserts six claims against Carter Murray's employer, FCB, under the Fair Labor Standards Act ("FLSA") and/or the New York Labor Law ("NYLL"), as well as a claim sounding in quasi contract.[2] Though Plaintiffs were well aware of Mr. Murray's employer at all times relevant to this action, they chose to wait until the FAC to allege, for the first time, that FCB jointly employed Plaintiffs along with the Murrays. This

---

[1] Notably, the FAC falsely alleges that a friend of the Murrays made racist remarks. The supposed remarks have no conceivable bearing on this case and were pled for no legitimate purpose. The allegations were only withdrawn after Plaintiffs sought leave to file a motion to strike. The SAC is materially identical to the FAC with the omission of those paragraphs.

[2] The SAC contains a total of 10 claims as follows: Count 1 - FLSA minimum wage claim; Count 2 – NYLL minimum wage claim; Count 3 – NYLL overtime claim; Count 4 – NYLL spread of hours claim; Counts 5 and 6 – NYLL wage notice and wage statement claims; Count 7 – breach of contract; Count 8 – quasi-contract; Counts 9 and 10 – retaliation under the FLSA and NYLL. As discussed in Section II *infra*, it is unclear whether the breach of contract claim is asserted against FCB given it was not a party to any agreement with Plaintiffs. Counts 9 and 10 are directed only to the Murrays.

supposed joint employment occurred on four alleged occasions over roughly one and one-half years.  On each occasion, FCB-related individuals were hosted by the Murrays at their home or on their boat.  There is no allegation that Plaintiffs signed an employment agreement with FCB.  Rather, Plaintiffs would have the Court hold, contrary to established precedent, that because they worked for the Murrays, and because Carter Murray works for FCB, Plaintiffs also worked for FCB.

For the reasons set forth below, Plaintiffs fail to state a claim against FCB on any of their causes of action and the Court should dismiss the SAC against FCB in its entirety.

<u>First</u>, the FLSA and NYLL only apply to "employers," and FCB was not Plaintiffs' employer.  In the Second Circuit, a court must look to the "economic reality" to determine whether FCB was Plaintiffs' joint employer along with the Murrays.  This analysis considers the following factors: (1) whether FCB had the power to hire and fire Plaintiffs; (2) whether FCB supervised Plaintiffs; (3) whether FCB determined payment for Plaintiffs; and (4) whether FCB maintained Plaintiffs' employment records.  Not a single one of these factors supports a joint employer relationship.  As FCB was not Plaintiffs' employer as a matter of law, all six wage and hour claims fail against FCB.

<u>Second</u>, Plaintiffs have no claim for quasi-contract.  Insofar as Plaintiffs worked at FCB-related events held at the Murrays' home or on the Murrays' boat, Plaintiffs were performing the work they agreed to perform in the employment contract they signed with the Murrays.  Plaintiffs' quasi-contract claim therefore fails against FCB.

## **BACKGROUND**

## I.    **The Murrays Hire Plaintiffs to Work As Live-In Caretakers**

Defendants Carter and Carmen Murray own the Property, which is located in Staatsburg,

New York.  (SAC ¶¶ 7-8.)[3]  Plaintiffs worked at the Property as live-in caretakers from February 1, 2018 through March 19, 2020.  (*Id.* ¶¶ 19, 42.).  Their job was to "devote full time care" to the Property.  (*Id.* ¶ 33.)  Plaintiffs were hired after they responded to a Craig's List posting in January 2018.  (*Id*. ¶ 22.)  Plaintiffs do not allege that FCB had any role in the posting.  After they responded to the posting, Plaintiffs had a virtual interview with Carter Murray. (*Id.* ¶ 23.) Plaintiffs do not allege that FCB's human resources department had any role in this interview. Plaintiffs do not allege that FCB was even mentioned during the interview.

After the virtual interview, Carter Murray invited Plaintiffs to the Property for an in-person interview.  (*Id.* ¶ 27.)  Plaintiffs came by Metro-North, and Carter Murray paid for their tickets.  (*Id.* ¶ 28.)  Plaintiffs do not allege that FCB paid for the tickets.  Following the in-person interview, Carter Murray sent Plaintiffs a "Caretaker Agreement" that "memorialized the negotiated terms of Plaintiffs' employment with [the Murrays]."  (*Id.* ¶ 31.)  Plaintiffs do not allege that FCB had any involvement in or knew about the Caretaker Agreement.  Nor do Plaintiffs allege that Carter Murray signed the Caretaker Agreement in his capacity as an FCB employee.  The Caretaker Agreement provided that Plaintiffs would be paid by the Murrays.  (*Id.* ¶ 35.)  Plaintiffs do not allege they were paid by FCB.  Finally, the Caretaker Agreement provided Plaintiffs with the use of a car leased by Carter Murray.  (*Id.* ¶ 37.)  Plaintiffs do not allege that FCB was on the car lease.

## II.  After the Murrays Counterclaim, Plaintiffs Name FCB as a Defendant

In response to the Complaint, the Murrays filed an Answer with Counterclaim.  The Counterclaim describes how Plaintiffs began to harbor an unlicensed Rottweiler-Pit Bull mix on the Property, without permission.  (Counterclaim ¶¶ 15-17, Dkt. No. 13.)  The Murrays learned

---

[3] The allegations in the SAC are assumed to be true for purposes of this motion.

about the dangerous animal when it approached one of their guests.  (*Id.* ¶ 18.)  Rather than remove the dog, Plaintiffs quit their caretaker jobs but refused to vacate the apartment they had been provided on the Property.  (*Id.* ¶ 29.)  The Murrays were unable to rent out the property while Plaintiffs squatted in their apartment with a dangerous, unlicensed pit bull.  (*Id.* ¶¶ 25-35.) Accordingly, the Murrays asserted counterclaims to recover lost rental income.  (*Id.* at Count 2.) The Murrays also sought to recover for damage to the Property caused by Plaintiffs and their pit bull.  (*Id.* at Counts 3-4.)

Plaintiffs responded to the Counterclaim by filing the FAC.  The FAC alleges that a friend of the Murrays made racially offensive remarks.  (FAC ¶¶ 181-88.)  These allegations are not just false; they are abhorrent to the Murrays.  In addition, and despite the fact that the word "FCB" does not even appear in the original Complaint, the FAC named FCB as a Defendant under a "joint employer" theory.

In their pleading, Plaintiffs state that the Property is described as an "offsite" meeting space in FCB marketing materials.  (SAC ¶ 21.)  Plaintiffs allege that on four occasions during the roughly one and one-half years they worked for the Murrays, Plaintiffs were also employed by FCB.  On each of these occasions, Plaintiffs allege they were performing work on the Murray's Property or on their boat, and they further allege that on each of the occasions, the work Plaintiffs performed was the exact caretaking work they agreed to provide pursuant to the Caretaker Agreement they entered into with the Murrays.  Specifically, Plaintiffs make the following allegations about the four occasions they were supposedly FCB employees:

- <u>September 20, 2018</u>.  On September 20, 2018, Carter Murray hosted a social event on his boat.  Plaintiffs cooked for the event and served the guests, who were Carter Murray's "business partners."  The event was "important for [Carter

Murray] professionally."  Carter Murray posted a picture of the event on Instagram.  (*Id.* ¶¶ 110-18.)[4]

- <u>An unknown date in Spring 2019</u>:  At some point in Spring 2019, Carter Murray hosted three people for lunch in the "designated meeting space" at the Property.  (*Id.* ¶¶ 119-23.)  One person was FCB's Chief Creative Officer, and the others were a "publicist" and a "writer."  Plaintiffs served lunch and cleaned.

- <u>July 19, 2019</u>:  On July 19, 2019, Carter Murray held an "FCB Annual Staff Appreciation Party" at the Property.  (*Id.* ¶¶ 124-30.)  Plaintiffs state that Suarez was told to prepare a particular room for an FCB employee and then "take direction" from that person.  During the party, Plaintiffs made sure the Property did not get messy or damaged and that guests did not "wander" through the Main House.  Carter Murray posted a picture of the event on Instagram.

- <u>February 11-12, 2020</u>:  An FCB workshop was held on the Property on February 11-12, 2020.  (*Id.* ¶¶ 131-43.)  To prepare, Plaintiff Suarez and the Murrays' handyman cleaned, dusted, fumigated, and moved furniture.  During the workshop, Suarez cleaned and catered to the guests.  Suarez provided receipts to Murray's assistant.  Carter Murray posted pictures of the event on Instagram.

More notable than what Plaintiffs allege about FCB is what they fail to allege.  Plaintiffs do not allege their supposed employment with FCB ever extended to activities outside of the Murray's home or their boat.  They do not allege they ever interacted with anyone in FCB's human resources department.  They do not allege they were hired for any of the four events or terminated when any of the events ended.  They do not allege they were paid by FCB.  They do not allege they received company documents of any kind from FCB.  And though they maintain FCB was their employer in addition to the Murrays, they do not name a single FCB employee other than Carter Murray.

---

[4] The FAC alleges that Carter posted the picture on his FCB Instagram page, https://www.instagram.com/cartermurray7/?hl=en.  The Court can examine the Instagram page for purposes of a motion to dismiss.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).  A cursory examination of the many family photographs appearing on the page make clear that it is a personal page, not an FCB page.

**III.**     **The Court Grants Leave for Defendants to Move to Strike and to Dismiss**

On September 29, 2020, Defendants submitted a pre-motion conference letter seeking leave to file a motion to dismiss the FAC's claims against FCB and a motion to strike the defamatory allegations directed at the Murrays' friend.  (Dkt. No. 32.)  Plaintiffs responded on October 5, 2020.  (Dkt. No. 36.)  The Court held a pre-motion conference on October 9, 2020. During that conference, Plaintiffs could not explain how their defamatory allegations about the Murrays' friend had any bearing on this case.  Nor could they articulate how their joint employer allegations satisfy the Second Circuit's joint employer test.  At the close of the conference, the Court granted Defendants leave to file a motion to dismiss and to strike.

Before the Murrays could brief the motion to strike, Plaintiffs agreed to excise Paragraphs 181-88 from their pleading and file the SAC and the Murrays confirmed they would not pursue the Counterclaim in this proceeding.  (Dkt. No. 37.)  The Court so-ordered that stipulation on October 23, 2020.  (Dkt. No. 38.)  Because Plaintiffs refused to drop their groundless claims against FCB, FCB now moves to dismiss all claims against it in the SAC.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79.  Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of

elements of a cause of action will not do." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

I.   **Counts 1 Through 6 Should Be Dismissed Because Plaintiffs Were Not FCB Employees**

Counts 1 through 6 of the SAC assert various alleged wage and hour violations against FCB under the FLSA and the NYLL.  To state a claim against FCB under either statute, Plaintiffs must sufficiently allege that FCB was their employer.  Because they fail to do so, Counts 1-6 should be dismissed as against FCB.

### A.   **The Second Circuit Applies the Economic Reality Test to Determine Whether an Entity is an Employer Under the FLSA and the NYLL**

To state a claim under the FLSA or the NYLL, Plaintiffs must allege that FCB was their "employer."  29 U.S.C. § 203(d); NYLL § 190(3).  To determine "employer" status, courts look to the "economic reality" by examining whether the supposed employer:

(1)   had the power to hire and fire the employees,

(2)   supervised and controlled employee work schedules or conditions of employment,

(3)   determined the rate and method of payment, and

(4)   maintained employment records.

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).[5]  "No one of the four [*Carter*] factors standing alone is dispositive . . . Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

The *Carter* factors must be grounded in well-pled facts and conclusory allegations are

---

[5] "In the Second Circuit, courts generally interpret [t]he statutory standard for employer status under NYLL [to be] nearly identical to that of the FLSA."  *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 2019 WL 1244291, at *8 (S.D.N.Y. Mar. 18, 2019) (internal quotations and citations omitted).

insufficient to state a claim for joint employment. *Yongfu Yang v. An Ju Home, Inc.*, No. 19-CV-5616 (JPO), 2020 WL 3510683, at *4 (S.D.N.Y. June 29, 2020) ("Plaintiffs may not meet their pleading burden by merely regurgitating relevant pleading standards — a plaintiff must plead facts rather than conclusory statements of law."); *Solis v. ZEP LLC*, No. 19CV4230 (JGK), 2020 WL 1439744, at *8 (S.D.N.Y. Mar. 24, 2020) (dismissing joint employer claim where "[t]he Amended Complaint simply recites in conclusory fashion the statutory factors").

      **B.**      **Plaintiffs' Conclusory Allegations Fail to Satisfy a Single *Carter* Factor**

Plaintiffs' allegations do not satisfy a single *Carter* factor. Accordingly, FCB was not Plaintiffs' employer under the FLSA or the NYLL, and Counts 1 through 6 should be dismissed.

      **1.**      **Plaintiffs Do Not Allege FCB Had the Power to Hire or Fire Them**

Plaintiffs' allegations concerning the first *Carter* factor are entirely conclusory. Plaintiffs do not allege they interviewed with FCB or they signed an employment agreement with FCB. Plaintiffs do not allege they interacted with anyone from FCB's human resources department. They do not allege they were hired by FCB for each of the four events they identify in their pleading, nor do they allege they were terminated by FCB when the events ended.

All Plaintiffs offer regarding hiring and firing is the conclusory statement, "Both Defendants and FCB had the power to hire and fire Plaintiffs with respect to the foregoing FCB events." (SAC ¶ 148.) That fails to allege the first *Carter* factor. *See Yongfu Yang*, 2020 WL 3510683, at *3 (granting motion to dismiss under *Carter* where "Plaintiffs offer[ed] no factual support for the notion that the [] Defendants 'had the power to hire and fire the employees.'"); *Huer Huang v. Shanghai City Corp.*, No. 19-CV-7702 (LJL), 2020 WL 2319166, at *6 (S.D.N.Y. May 11, 2020) (describing the same allegation made by Plaintiffs here as "the

paradigmatic formulaic recitation of the elements of a cause of action [that] is insufficient to establish a claim for relief under *Twombly* and *Iqbal*") (internal quotations and citations omitted).

Indeed, Plaintiffs' non-conclusory allegations about hiring and firing focus exclusively on the Murrays, individually:  that Plaintiffs interviewed with Carter Murray, signed a Caretaker Agreement with the Murrays, and were given use of a car leased by Carter Murray.  (SAC ¶¶ 22, 23, 27, 31, 37.)  In other words, Plaintiffs allege that the Murrays—not FCB—had the power to hire and fire them.

### 2.    Plaintiffs Do Not Allege FCB Supervised or Controlled Their Work Schedules or Conditions of Employment

With the exception of a single, conclusory allegation, (SAC ¶ 150), the SAC makes *no* allegation that FCB supervised them on three of the four dates they supposedly worked for FCB (September 20, 2018, the unknown date in Spring 2019, or on February 11-12, 2020).  As for the fourth date, Plaintiffs allege that Suarez was told to "take direction" from an unnamed FCB employee who was staying at the property on July 19, 2019.  That is insufficient to allege the third *Carter* factor, which considers whether a defendant "supervised and controlled employee work schedules or conditions of employment."

In particular, Plaintiffs make no allegation that the unnamed employee, whom Suarez was asked to help during the employee's alleged visit to the Property, controlled Suarez's work schedule.  Nor do Plaintiffs allege that the unnamed employee controlled how Suarez did her work.  Instead, Plaintiffs allege that on July 19, 2019, Suarez performed general duties, such as keeping the Property clean, (*id.* ¶ 127), all of which are covered by the Caretaker Agreement, (*id.* ¶ 33).  It is implausible to conclude that the unnamed FCB employee was supervising Suarez given that Suarez was performing general work for the Murrays that had nothing to do with the employee or FCB.  Accordingly, Plaintiffs fail to satisfy the second *Carter* factor as well.

3.   **Plaintiffs Do Not Allege FCB Determined Their Rate and Method of Payments**

Plaintiffs' sole allegation concerning their pay further confirms that FCB was not their employer: "Both Defendants and FCB determined the rate and method payment with respect to the foregoing FCB events." (SAC ¶ 151.)  That conclusory allegation comes nowhere close to satisfying the *Carter* test.  Furthermore, insofar as Plaintiffs plead that they entered into a Caretaker Agreement with the Murrays that sets forth Plaintiffs' pay rate and payment method, that allegation supports a finding that the Murrays and not FCB were Plaintiffs' employers.  *See Yongfu Yang*, 2020 WL 3510683, at *4 (finding that third *Carter* factor was not satisfied where "Plaintiffs assert that [the defendant], rather than the [alleged joint employer], promised to pay Plaintiffs").  Accordingly, Plaintiffs fail to satisfy the third *Carter* factor

4.   **Plaintiffs Do Not Allege FCB Maintained Their Employment Records**

Finally, Plaintiffs do not allege FCB maintained Plaintiffs' employment records.  Accordingly, Plaintiffs fail to satisfy the fourth *Carter* factor.

*       *       *

In sum, Plaintiffs do not satisfy a single one of the *Carter* factors.  The Court should therefore hold that FCB was not Plaintiffs' employer and dismiss Counts 1 through 6 of the SAC as against FCB.[6]

---

[6] At the pre-motion conference, Plaintiffs maintained that the SAC should not be dismissed as against FCB because FCB identifies the Property as an "offsite meeting space." (SAC ¶ 21.)  Plaintiffs' argument proves too much.  If a company were to describe the Javits Center as an "offsite meeting space," (which it indisputably is), then under Plaintiffs' theory, the Javits Center's employees would be jointly employed by every convention held at the Javits Center.  Any time a company hosted an event somewhere other than on its own property, the company's workforce would spontaneously expand for the duration of the event to include the employees of the event space, along with the company's responsibility for taxes, training, and compensation.  Not only would that result make no sense on its own terms, it also runs contrary to *Carter*, because it changes the test from economic reality to one based purely on physical

## II.   Count 8 Should Be Dismissed Because FCB Was Not Unjustly Enriched

Count 8 of the SAC asserts a quasi-contract a claim against FCB based on unjust enrichment, quantum meruit and promissory estoppel.[7]  For the reasons set forth below, the SAC fails to state a claim on any of those bases and the Court should dismiss Counts 8 as against FCB.

First, "[t]he basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  Plaintiffs do not allege that either FCB or the Murrays refused to pay them for the work they performed at FCB events. Accordingly, Plaintiffs have not pled that FCB was enriched at Plaintiffs' expense.  Nor do Plaintiffs allege that equity and good conscience dictate that FCB pay Plaintiffs when Plaintiffs were paid by the Murrays pursuant to the Caretaker Agreement.  Finally, the unjust enrichment claim fails because Plaintiffs had a contract with the Murrays and were performing work pursuant to that contract.  *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Second, "[i]n order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the

---

location.  Thus, insofar as Plaintiffs attempt to salvage their claims against FCB by relying on the "offsite meeting space" allegation, that argument should be flatly rejected by the Court.

[7] Count 7 states that "Defendants [the Murrays] and breached the Employment Agreement . . . ."  (SAC ¶ 297.)  FCB does not understand Plaintiffs to be asserting a breach of contract claim against FCB as it is not a party to the Caretaker Agreement.  If that is incorrect, that claim must be dismissed because Plaintiffs do not allege any of the elements of a breach of contract claim against FCB.

reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotations and citations omitted).  At the very least, Plaintiffs fail to allege the second, third, and fourth elements.  In addition, like their unjust enrichment claim, Plaintiffs' quantum meruit claim against FCB also fails because Plaintiffs were performing work pursuant to their contract with the Murrays.  *See id.*

Third, "[i]n New York, promissory estoppel has three elements: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance." *Feibleman v. Trustees of Columbia Univ. in City of New York*, No. 19-CV-4327 (VEC), 2020 WL 3871075, at *3 (S.D.N.Y. July 9, 2020) (internal quotations and citations omitted).  Plaintiffs do not allege any of those elements:  They do not allege a promise from FCB, and nor do they allege reliance or injury based on anything FCB said or did.

In sum, Plaintiffs fail to state a claim for quasi-contract on any basis and Count 8 should be dismissed as against FCB.

## CONCLUSION

For the foregoing reasons, the Court should grant FCB's motion to dismiss, and the SAC should be dismissed against FCB.

Dated: White Plains, New York
October 23, 2020

YANKWITT LLP

By: _____
Russell M. Yankwitt
Michael H. Reed
140 Grand Street, Suite 501
White Plains, New York 10601
Tel.:  (914) 686-1500
Fax:  (914) 487-5000
*Attorneys for Defendant FCB Worldwide, Inc.*

12